371 So.2d 247 (1979)
Paul Henry KIDD, in his capacity as attorney for Cheryl Qualls
v.
Honorable David T. CALDWELL, Judge, Second Judicial District Court, Parish of Jackson.
No. 63007.
Supreme Court of Louisiana.
March 5, 1979.
Concurrence in Part and Dissent in Part Opinion May 21, 1979.
On Rehearing May 21, 1979.
*248 Paul Henry Kidd, Monroe, for plaintiff-relator.
*249 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon H. Whitten, Dist. Atty., for defendant-respondent.
DIXON, Justice.[*]
Cheryl Booker Qualls was indicted by the grand jury of Jackson Parish for aggravated kidnapping, a violation of R.S. 14:44. On the morning of September 7, 1978, the voir dire of prospective jurors for her trial was interrupted when the petit jury venire was exhausted after only ten of the required twelve jurors had been empaneled. At this point the defense attorney, Paul Kidd, stated that he had some motions to file and asked that the jury be removed. The trial judge replied that he would not take up any motions at that time and ordered fifty additional names to be drawn from the general venire box. Kidd then insisted that his motion be filed, and the following exchange took place:
"BY MR. KIDD,
Of Counsel for Defendant: Qualls wants this to file. Does this have to go downstairs to be filed? I ask that this be filed. The record will reflect that a Motion to Recuse has been filed and this Court is powerless to act.

BY THE COURT: Mr. Kidd, you will take your seat and remain quiet or we will remove you from the Courtroom.
BY MR. KIDD,
Of Counsel for Defendant: Well, then, that is the perogative [sic] of this Court and I suggest that it do that because I have filed a motion and you have ignored it.

BY THE COURT: I have ordered that the additional jurors be drawn. I will consider the motion at the proper time.
BY MR. KIDD,
Of Counsel for Defendant: The proper time is now. The law requires it and I suggest that the

BY THE COURT: Court will be in recess and the jury removed.

BY THE SHERIFF: Court is in recess.
(The jury is taken from the Courtroom into the jury room.)"
Kidd was then summoned into chambers where further discussion ensued between him and Judge Caldwell. When court was called to order, the judge stated for the record that he found Kidd's actions highly "contemptible." In return, Kidd accused the judge of having cursed him in chambers and of saying that the trial would continue regardless of his efforts. After denying the cursing, the trial judge ordered Kidd to be seated and stated his intention of continuing with the jury selection. Kidd's response was immediate:
"BY MR. KIDD, Well, am I under arrest? I've been told that I will be carried foot first 

BY THE COURT: You will remain in the Courtroom until I complete this trial.
BY MR. KIDD,
Of Counsel for Defendant: I want to know if I'm under arrest.

BY THE COURT: You are in contempt of Court. If you try to leave, I will have to place you under arrest, if that's what you want me to do.
BY MR. KIDD,
Of Counsel for Defendant: I simply want to know if this man has the right to tell me that he is going to bring me into Court feet first.

BY THE COURT: Mr. Kidd, I'm going to ask you once more to take your seat and remain quiet until I complete what I have to say. We will draw the fifty additional jurors; then we will hear your motions. Clerk, proceed to draw.
BY MR. KIDD,
Of Counsel for Defendant: I would also like for the record to reflect that I asked the Court in chambers to look at the law, to review the law; I appeal to the District Attorney who protects all the people of this parish to look at the law and what happens after

BY THE COURT: Will you remain quiet, Mr. Kidd, while we draw the names?"
*250 After fifty additional names were drawn and ordered subpoenaed, the judge offered to consider the motion. Kidd then stated that under the applicable provisions of the Code of Criminal Procedure, the trial judge sought to be recused could not consider the merits of the motion. Disregarding this argument, the trial judge then overruled the motion on the following grounds:

"BY THE COURT: Article 674, if that concludes your argument and whatever else you intend to present, also provides that the written motion shall be filed prior to commencement of the trial. There is no evidence whatsoever that something has been discovered since the beginning of this trial. Of course, the allegations are completely erroneous regarding this Judge and, due to the tardy filing of the motion, there being nothing shown that this has been discovered since the beginning of the trial, the Court sees no basis whatsoever for the motion. In fact, the Court considers it an effort to delay the trial of this case which has been apparent to the Court from the beginning of the case that there was no desire to expedite the proceedings or to conclude the trial of the case. That's so far as this Judge is concerned; so the Court, No. 1, finds that the motion was filed too late; No. 2, there is nothingnothing has been shown that the grounds alleged have been discovered since the beginning of the trial, and, of course, my statement is also to the effect that the allegations in the Motion to Recuse are completely erroneous, and, therefore, your Motion to Recuse will be overruled."
Kidd objected to the court's ruling on the merits of the motion and also insisted that the facts forming the basis for the motion had been discovered since the commencement of trial. He added that he saw little reason to continue with the trial after the "verbal blasting" he had received during the recess, and suggested that the court "take whatever action it is going to take." Judge Caldwell responded that he had not cursed Kidd in chambers, and that his intention to continue with the trial was not influenced by the motion to recuse. Then, after characterizing the allegations set forth in the motion as both erroneous and dilatory, the judge recessed the court until 1:00 p. m. the same day.
When Kidd did not return at the designated hour, Judge Caldwell ordered the courthouse searched for him. After the search proved fruitless, the judge ordered a summons to issue, ordering the defense attorney to appear to answer charges of contempt arising from his behavior at the morning session and from his failure to appear in the afternoon, and "to be heard orally in defense or mitigation." Kidd was ordered to appear at 4:00 p. m., or within two hours of service if he were served at such a time that returning by the designated hour would be impossible.
At 5:40 p. m. the court noted for the record that Kidd had been served at 3:20 p. m. and therefore had been allowed more than two hours to appear. The court then found Kidd guilty of two counts of direct contempt and imposed a $100.00 fine and a twenty-four hour jail sentence for the first count, which encompassed the misconduct at the morning session. Kidd was also sentenced for failing to return to court at 1:00 p. m. to pay a $200.00 fine and incarceration "in the parish jail for a period of ten additional days or until the further orders of this Court."
Kidd applied to this court for supervisory writs, and on September 8, 1978 an order issued staying the contempt proceedings pending against him. 362 So.2d 583 (La. 1978). The motion to recuse was heard by Judge Paul A. Newell pursuant to this court's order and was denied on September 11, 1978.
The relator now asks that the contempt summons and sentences imposed by Judge Caldwell be set aside. However, his request that we review the ruling denying the motion to recuse is moot, since Cheryl Qualls pleaded guilty to the lesser offense of attempted aggravated kidnapping on September 12, 1978 without reserving the right to review the denial of this motion.
*251 The Code of Criminal Procedure defines contempt as "an act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." C.Cr.P. 20. There are two types of contempt, direct and constructive. Article 21 of the Code of Criminal Procedure sets forth the grounds which constitute a direct contempt of court:
"A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge; or, a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record; or, a contumacious failure to comply with an order sequestering a witness.
A direct contempt includes, but is not limited to, any of the following acts:
(1) Contumacious failure, after notice, to appear for arraignment or trial on the day fixed therefor;
(2) Contumacious failure to comply with a subpoena, or summons to appear in court, proof of service of which appears of record;
(3) Contumacious violation of an order excluding, separating, or sequestering a witness;
(4) Refusal to take the oath or affirmation as a witness, or refusal of a witness to answer a nonincriminating question when ordered to do so by the court;
(5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
(6) Breach of the peace, boisterous conduct, or violent disturbance tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
(7) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a motion, plea, brief, or other document, filed with the court, in irrelevant criticism of another attorney or of a judge or officer of the court;
(8) Violation of a rule of the court adopted to maintain order and decorum in the court room; or
(9) Contumacious failure to attend court as a member of a jury venire or to serve as a juror after being accepted as such when proof of service of the subpoena appears of record."
At the morning session, the relator refused to accept the trial judge's decision to delay the hearing on the motion to recuse until after the petit jury venire was selected. He refused to proceed until another judge was appointed to hear its merits. His conduct and language were contemptuous of the court's authority, were disrespectful and disruptive and far exceeded the wide latitude permitted a lawyer in forcefully presenting his client's cause. These actions constituted a direct contempt. C.Cr.P. 21(5).
The relator defends his actions by arguing that the trial judge was transgressing limits imposed by the legislature on his authority when he delayed in appointing the judge ad hoc and later denied the motion to recuse on its merits. This contention is based on the terms of Article 673 of the Code of Criminal Procedure which provides:
"A judge has full power and authority to act, even though a ground for recusation exists, until he is recused, or a motion for his recusation is filed."
This article was recently interpreted by this court in State v. Price, 274 So.2d 194 (La. 1973), in which guidance was sought from the interpretation given to companion provisions in the Code of Civil Procedure:
"These provisions of the Code of Criminal Procedure are based upon similar provisions in the Code of Civil Procedure, and interpretation of the latter provisions is pertinent here. It has long been recognized in our civil procedure that once a judge is recused, or a motion for his recusal has been filed, he has no power to act (except to appoint the proper person to sit ad hoc when the law provides for such *252 an appointment). Any action taken by a recused judge is an absolute nullity...." 274 So.2d at 197. (Emphasis added).
Although this statement appears to support the relator's contention, upon reflection it is evident that the holding in Price is not dispositive of the issue at hand. In Price, the recused judge signed an extension of the return date and the date for filing bills of exception. Later, when this error was noticed after the elapse of the original return date, the judge ad hoc extended the return date. In holding the extension granted by the recused judge to be a nullity, this court followed well established jurisprudence which holds that the judge sought to be recused has a duty to stand aside and to appoint a judge ad hoc to pass upon the validity of the recusation. See State v. Savoy, 207 La. 982, 22 So.2d 402 (1945); State ex rel. Nolan v. Judge of Twenty-Second Judicial District, 39 La.Ann. 994, 3 So. 91 (1887); State ex rel. Tyrrell v. Judge of Fifteenth Judicial District, 33 La. Ann. 1293 (1881). None of these cases held that a motion to recuse rendered the judge incompetent to punish for a subsequent direct contempt of court.[1]
The authority to punish for contempt of court is an inherent power of the court which is conferred not only to aid in the exercise of its jurisdiction and the enforcement of its lawful orders, but also as a means of accomplishing the court's duty "to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." C.Cr.P. 17; State ex rel. Collins v. Collins, 237 La. 111, 110 So.2d 545 (1959). For this reason, behavior disrespectful to the court is punishable as a contempt even when the behavior is a reaction to a court order which eventually is determined to be invalid. As was noted in City of Lake Charles v. Bell, 347 So.2d 494 (La.1977):[2]
". . . The correctness of a court order or ruling is not contested by deciding to willfully disobey it, without suffering the consequences of that disobedience. Respect for judicial process is a small price for the civilizing hand of law. Absent a showing of transparent invalidity or patent frivolity surrounding the order, it must be obeyed until stayed or reversed by orderly review. . . ." 347 So.2d at 496.
The record indicates that the relator had a valid argument that the trial judge was in error to continue with the selection of the petit jury venire after the motion was filed and was acting beyond his authority in passing on the merits of the motion. Nevertheless, the relator's proper course was to object to the actions taken by the judge and to apply to this court for supervisory writs. By choosing to ignore his legal recourse, the relator interfered with the orderly administration of justice and denigrated the dignity of the court.
*253 We hold that the provisions of C.Cr.P. 673, limiting the power of a judge to act after a motion for his recusation is filed, do not affect the inherent power of a judge to control the conduct of those in his courtroom while court is in session.
The second count of contempt arose from the relator's failure to return to court at 1:00 p. m. to continue with the trial, and not from his failure to appear in response to the summons. The failure of an attorney to return to court after recess has been ordered is not specifically mentioned among the grounds for a finding of direct contempt enumerated in Article 21.[3] Nevertheless, under the facts of this case, it is clear that the defense attorney's failure to return constituted a direct contempt of court. Kidd's flight to Monroe left the trial of an important case in suspense for the rest of the day. Selection of the final two jurors for Qualls' trial was interrupted, with the result that those members of the petit jury venire who would not have served in this case were unduly inconvenienced. Since this was a capital case, the jurors had to be sequestered when the relator failed to return at 1:00 p. m. The judge was unable to tell prospective jurors when to return to court because it was unclear when Kidd would return, if ever. Such action clearly comes within the prohibition against "contumacious . . . behavior. . . tending to interrupt or interfere with the business of the court," C.Cr.P. 21(5), and therefore is properly punishable as a direct contempt of court.
Kidd did not apply to the trial court for a stay of proceedings in order to seek relief in this court, nor did he apply to this court for relief, until the next day.
A person who commits a direct contempt may be found guilty and punished without trial. C.Cr.P. 22. The argument has been raised that due process is denied an attorney who is found guilty of direct contempt merely because he failed to attend court at a designated hour, if he is given no opportunity to explain his absence. However, it is noteworthy that Article 22 envisions a confrontation between the judge and the party he has held in contempt, at which time the party may offer a defense or advance mitigating circumstances. This was the purpose of the summons issued to Kidd ordering him to appear before the court to answer to the contempt charges against him.
Kidd's failure to return to court after the noon recess was a clear abandonment of the judicial process; he resorted, not to the law, but to self-help. The lawyer decided the judge was wrong and stopped the trial. The remedies afforded Kidd and his client were not invoked. When questioned on oral argument about the reason he did not invoke the supervisory jurisdiction of this court, Kidd's only answer was that he had not been too successful in his other, earlier, efforts to obtain relief in this court. What the lawyer did, then, was to abandon the system, not to test it. He simply revolted against the judicial system and the rule of law because he thought the judge was wrong. His rebellious failure to return was contumacious behavior which not only interrupted the business of the court, but brought it to a halt, in violation of C.Cr.P. 21(5).
The stay order previously issued is set aside, and the convictions of Paul Henry Kidd and sentences for contempt are affirmed.
*254 DENNIS, J., concurs in part and dissents in part, with reasons.
DENNIS, Justice, concurring in part and dissenting in part.
I respectfully disagree with the original opinion's holding that Kidd's conduct forming the basis of the second count of contempt "comes within the prohibition against `contumacious . . . behavior . . . tending to interrupt or interfere with the business of the court,' C.Cr.P. 21(5), and therefore is properly punishable as a direct contempt of court."
In my opinion the conduct described by article 21(5) is clearly limited to behavior toward the judge or an attorney or court officer while in open court.
I concur in the holding of the original opinion with respect to the first count of contempt.

On Rehearing
TATE, Justice.
The facts are fully set forth in our opinion on original hearing.
We granted rehearing primarily to consider whether Kidd's decision to absent himself from court after the recess was a direct contempt within the meaning of La.C.Cr.P. art. 21, thus summarily punishable under La.C.Cr.P. art. 22.
I. The First Count of Contempt
At the outset, we note that the conviction and sentence for the first act of contempt were proper, for the reasons stated in our original opinion. Kidd's contumacious behavior occurred in open court, and the judge notified him that he was in contempt of court. Thus his behavior was a direct contempt, defined in article 21 as "one committed in the immediate view and presence of the court and of which it has personal knowledge," and was summarily punishable under article 22.
It was also within the judge's discretion to reserve sentencing for a later time rather than imposing sentence simultaneously with the citation for contempt. See Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952).[1]
As we held on original hearing, Kidd actually received a summons to appear in court for a hearing which would have afforded him the opportunity to present his defense and mitigation as required by article 22. We therefore confirm the conviction and sentence on the first count.
II. The Second Count of Contempt: Direct or Constructive?
We hold, however, that the second count of contempt was not a direct contempt and that it should have been tried as a constructive contempt on a rule to show cause as provided by La.C.Cr.P. art. 24. (A direct contempt, distinguishably, is punishable summarily and without trial, except to afford the contemnor the opportunity to be heard orally by way of defense or mitigation. Article 22.)
An attorney's failure to appear in court after a recess is not one of the acts mentioned in the list of direct contempts contained in article 21. Although this is an illustrative rather than an exclusive listing, this direct-contempt article does expressly include the following acts:
"(1) Contumacious failure, after notice, to appear for arraignment or trial on the day fixed therefor;
"(2) Contumacious failure to comply with a subpoena or summons to appear in court, proof of service of which appears of record . . ."
These explicit inclusions in the illustrative listing tend to exclude certain *255 other acts by implication. For instance, the witness who failed to comply with a subpoena or summons, proof of service of which did not appear of record, would be in a strong position to argue that the legislature intended to exclude this act from the category of direct contempts.
Likewise, inclusion of the above-quoted provisions that seem intended to apply to witnesses and defendants rather than counsel, as well as article 21(9) (making it a direct contempt for a member of a jury to fail to attend court), together with the special penalty provisions for attorneys contained in article 25 (see Part III of this opinion), tend to exclude (as a direct contempt) by implication an attorney's failure to appear in court after a recess.
We further note that, in this case, the court order that the attorney defied was not one of which proof of service appeared in the record.
Moreover, the list of constructive contempts in article 23 includes among others the following acts:
"(1) Willful neglect or violation of duty by a clerk, sheriff, or other person elected, appointed or employed to assist the court in the administration of justice;
"(2) Wilful disobedience of any lawful judgment, order, mandate, writ or process of court . . . ." (Italics ours.)
Thus, a violation of an "order" or "mandate" of the court, proof of service of which did not appear in the record, by an attorneya person employed to assist the court in the administration of justiceis clearly contemplated as a constructive contempt. This inclusion as a constructive contempt gives added weight to its implied exclusion as a direct contempt in the illustrative listing of the latter.
In accordance with the general rule of strict construction of criminal statutes, see, e.g., La.R.S. 14:3, it has been suggested that where an act might be regarded as either a direct or a constructive contempt, the doubt should be resolved in favor of the latter. In re Holmes, 355 So.2d 677, 678 (Miss. 1978); Fisher v. State, 248 So.2d 479 (Fla.1971).
The principal effect of finding that the present conduct was a constructive rather than a direct contempt is that it cannot be tried summarily.
La.C.Cr.P. art. 24 provides that a person cited for constructive contempt shall be tried by the judge on a rule to show cause that expressly alleges the facts constituting the contempt. A certified copy of the motion and of the rule to show cause must be served on defendant, and he must be allowed forty-eight hours to secure counsel and prepare his defense. These procedural safeguards are thought not necessary where all the facts constituting a direct contempt, (including evidence of the contemnor's intention and usually of any mitigating circumstances), are within the knowledge of the court because all the facts constituting the contempt have taken place in view of the court.
The case of the absence of an attorney, where the intention might be other than contumacious and where a wide range of defenses involving out-of-court circumstances might be presented, is much more susceptible of the article 24 constructive-contempt procedure than of the summary direct-contempt procedure. We note that the constructive-contempt procedure is itself speedier and less cumbersome than an ordinary trial of a criminal offense, but it does provide due process safeguards which are necessary in the adjudication of an offense more complicated than simple aggressive or obnoxious behavior in open court.
The overwhelming majority of cases in other jurisdictions that have considered the question have held that the absence of an attorney, without more, is a constructive rather than a direct contempt. See, e.g., Taylor v. District Court, 434 P.2d 679 (Alaska 1967); Fisher v. State, 248 So.2d 479 (Fla.1971); Peltier v. Peltier, 388 A.2d 22 (R.I.1978) and authorities cited therein at 23; State ex rel. Wendt v. Journey, 492 S.W.2d 861 (Mo.App.1973); Annotation, 97 *256 A.L.R.2d 431, 459-64 (1964) and authorities cited therein.
The few cases to the contrary have generally relied on the legal fiction that where an attorney's actions disrupt court proceedings he is "present" in court for that purpose. See, e.g., Rosenstock v. Municipal Court, 61 Cal.App.3d 1, 132 Cal.Rptr. 59 (1976): Annotation, 97 A.L.R.2d 431, 457-69 (1964). This fiction is unavailable to us, not only because of the principle of strict construction of criminal statutes, but also because the Louisiana direct contempt provision, article 21, requires that an act "of which [the judge] has personal knowledge" must also be "committed in the immediate view and presence of the court" in order to be a direct contempt. The fact that the absence and resulting disruption are immediately apparent to the court fulfills only one of the two prongs of the test (immediate view and in the presence of the court) for this type of direct contempt, under the Louisiana statutory definition.
Accordingly, we must set aside the conviction on the second contempt, and remand this contempt proceeding to the district court for further proceedings consistent with the views expressed in this opinion.[2]
III. Trial Before Another Judge
Finally, we hold that under the facts of this case, the trial of the second count of contempt should be before a judge other than the one toward whom the contumacious behavior was directed.
In Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), the United States Supreme Court held that where contemptuous conduct is of the sort likely to provoke a trial judge and embroil him in personal controversy with the defendant, and where summary punishment procedures are not used, the contempt trial should preferably be heard by another judge. Not only the possibility of actual bias on the part of the trial judge, but also the possibility of the appearance of bias, should be taken into account.
In the instant case, the portions of the transcript quoted in our original opinion do reflect some hostility between the attorney and the trial judge. The judge was provoked by Kidd's contumacious conduct into threatening to arrest Kidd if he should leave, and into saying not only that Kidd was in contempt, but also that his actions were "highly contemptible."
These circumstances might not by themselves have required application of the Taylor v. Hayes rule. However, subsequent to the conduct, the judge's strong feelings on this matter had been demonstrated by his issuance of an ex parte warrant of arrest for Kidd before our original affirmance of the contempt convictions was final, and by his letter to this court following our original opinion in which he expressed his desire to resolve the matter quickly and requested this court to determine the defendant's application for a rehearing at an expedited conference.
Balancing the strong feelings generated by this matter and the possibility of the appearance of bias, against the need for prompt action to preserve courtroom decorum, we cannot say that the trial judge abused his discretion in not recusing himself from the summary trial of Kidd's direct (first) contempt on the day it occurred. However, since our holding that the second act should be tried as a constructive contempt will necessitate a new hearing on this count, and since the factor of preserving courtroom decorum is no longer present, the spirit of Taylor indicates that it would be better for the appearance of justice for another judge to try the second count of contempt.

*257 Conclusion

Kidd's failure to appear in court after the recess was improperly tried under the summary procedure provided for direct contempts. In any case, the enhanced penalty provision should not have been used. The second count should be retried as a constructive contempt before a judge other than the one against whom the contumacious behavior was directed.

Decree
The sentence and conviction on the first count are affirmed. The sentence and conviction on the second count are set aside, and the case is remanded for a new trial in accordance with the provisions of La.C.Cr.P. art. 24 before a judge other than the respondent.
SENTENCE ON FIRST CONTEMPT ADJUDICATION AFFIRMED; SENTENCE ON SECOND CONTEMPT ADJUDICATION SET ASIDE, AND CASE REMANDED FOR FURTHER PROCEEDINGS.
SUMMERS, C. J., is of the opinion that the affirmance of the first count of contempt is correct; however, I dissent from the remaining statements of this opinion on rehearing, being of the opinion that the original is correct.
NOTES
[*] Chief Judge William A. Culpepper participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Joe W. Sanders, Retired.
[1] In State v. Hayes, 199 La. 549, 6 So.2d 657 (1942), a motion to recuse was filed but was denied by the trial judge on the ground that it failed to disclose facts from which a conclusion of interest on the judge's part could be drawn. Subsequently, the trial judge caused a rule to issue requiring the defendant and his attorney to show cause why they should not be held in contempt for filing a "scurrilous, libelous and vicious" motion (the motion to recuse). After holding that the judge erred in failing to refer the motion to another judge for a hearing, this court noted that the question of contempt " . . . can only properly come up for consideration if and when the contempt proceedings are sought to be enforced against the relators after the hearing is had on the motion for recusation." 199 La. at 555, 6 So.2d at 659.

The apparent reason for relegating the contempt hearing to a time after the hearing on the motion to recuse was that ". . . the allegations, if true, would not be punishable for contempt, however derogatory in nature. . . ." 199 La. at 555, 6 So.2d at 659.
[2] In the Bell case the defendant was scheduled to be tried at 2:00 p. m. In the morning defendant's lawyer filed a petition in the federal court to remove the case, which gave the United States District Court exclusive jurisdiction over the case. Defendant's lawyer appeared at the appointed time in the city court but could not convince the city judge that he lacked jurisdiction. For his effort, the lawyer was held in contempt by the city judge. We reversed.
[3] In State v. Jones, 346 So.2d 708 (La.1977), a writ was granted reversing and setting aside a judgment of direct contempt on the ground that the record did not support such a finding merely because the applicant had not appeared in court at the appointed time. However, the facts of the Jones case are clearly distinguishable from those of the case before us. Jones pleaded guilty to receiving stolen things and was sentenced to two years in prison. His attorney requested that execution of the sentence be delayed slightly so that Jones could complete some personal affairs. The trial judge agreed and ordered the defendant to appear in court by 5:00 p. m.; when he failed to do so, he was adjudged in direct contempt of court. This ruling was reversed because Jones' actions, although certainly contemptuous, did not interrupt or interfere with the business of the court. No proceedings were held in abeyance; no jurors were left sequestered; the court's docket was not thrown into confusion. The only effect of Jones' failure to appear was that he was not surrendered to penal authorities before the judge but had to be arrested on the following day.
[1] As there stated, 72 S.Ct. 456:

"* * * If we were to hold that summary punishment can be imposed only instantly upon the event, it would be an incentive to pronounce, while smarting under the irritation of the contemptuous act, what should be a well-considered judgment. We think it less likely that unfair condemnation of counsel will occur if the more deliberate course be permitted.
"We hold . . . that if [the trial judge] believes the exigencies of the trial require that he defer judgment until its completion he may do so without extinguishing his power."
[2] Although under the penalty provisions of La. C.Cr.P. art. 25 Kidd could be sentenced to a maximum of six months imprisonment and a five hundred dollar fine for a constructive contempt (the lower penalties for attorneys only applying to direct contempts), we note that under the due process principle of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) he may not be punished by a heavier sentence because of the successful exercise of review rights and therefore may be sentenced on retrial to no more than the ten days and two hundred dollars originally imposed on the second count.