391 So.2d 440 (1980)
In re Clyde D. MERRITT.
No. 80-K-1836.
Supreme Court of Louisiana.
November 21, 1980.
*441 Dwight M. Doskey, New Orleans, for relator, Clyde D. Merritt.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Donald Giglio, Louise Korns, Asst. Dist. Attys., for State, respondent.
CALOGERO, Justice.
We review here the trial court's finding an attorney in direct contempt of court for his failure to appear for that court's ruling on a writ of habeas corpus which he had filed on behalf of a client. Finding this case to be controlled by Kidd v. Caldwell, 371 So.2d 247 (La.1979), we reverse and remand for a constructive contempt hearing on a rule to show cause before another judge.
On August 5, 1980, petitioner Clyde Merritt, an attorney with the Orleans Indigent Defender Program, entered Section "B" of the Orleans Criminal District Court for the purpose of filing two petitions for habeas corpus on behalf of a client. After some discussion with the court, petitioner eventually filed only one of the petitions and asked the court to set a date and time for its decision. Judge Braniff set the habeas claim for decision the following morning prior to 10:00 a. m. Petitioner informed the judge that he had a trial scheduled in another section of Criminal District Court but that he would be in Section "B" for the court's decision.[1]
When petitioner failed to appear by 10:15 a. m. on the following day, Judge Braniff issued an attachment for his arrest. Approximately five minutes later, Deputy Sheriff Jeff Ray, Captain, found petitioner *442 leaving a concession stand on another floor of the building. Petitioner refused to go with the officer to Judge Braniff's court. The deputy handcuffed and led petitioner to Section "B". Before Judge Braniff, petitioner explained that his subpoena for Section "F" had been for 9:30 instead of 10:00 a. m. and that he thus was in Section "F" rather than Section "B" that morning. The court refused to accept this explanation, found petitioner guilty of contempt and sentenced him to pay a fine of $100.00, in default of which petitioner was to serve twenty-four hours in the parish prison.
Pursuant to an order, petitioner, accompanied by counsel, appeared in Judge Braniff's court on August 7, 1980. The court informed counsel that his client had already been held in contempt of court, but that a note of evidence would be taken to establish for the record the basis of the contempt of the previous day. Defense counsel filed a motion to recuse the trial judge, which motion was denied. Defense counsel further objected to the taking of evidence on a matter as to which the verdict had already been returned. When this objection was overruled, counsel and petitioner elected, under protest, to remain at the proceedings but to limit their participation to cross-examination of the court's witnesses. Judge Braniff called two witnesses to testify and then concluded the hearing by making a short statement.
While petitioner assigns four errors as grounds for reversal of his conviction, the main issue presented by this writ application is whether an attorney's failure to appear in court constitutes a direct or constructive contempt and correspondingly whether or not the trial judge is permitted to find the attorney in contempt without the provoking of a rule to show cause.
We recently answered this very question in Kidd v. Caldwell, surpa. Reasoning essentially along the lines of the discussion which follows, we held that an attorney's failure to appear in court is at most constructive contempt.
The authority to punish for contempt of court falls within the inherent power of a court to aid in the exercise of its jurisdiction and to enforce its lawful orders. Both the Code of Civil Procedure and the Code of Criminal Procedure classify contempt as one of two types: direct or constructive. Article 21 of the Code of Criminal Procedure defines direct contempt as that committed in the immediate view and presence of the court and of which it has personal knowledge. Also defined as direct contempt are the contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record, and contumacious failure to comply with an order sequestering a witness. The article contains an illustrative, but not exclusive, list of examples of direct contempt.[2] Constructive contempt of *443 court is any contempt other than direct contempt, according to C.Cr.P. art. 23. That article also contains an illustrative list of examples.[3]
Concerning Kidd's failure to reappear in court following a recess, we noted that the act was not one of those mentioned in the list of direct contempts. Although the list is illustrative, in our opinion, the explicit inclusions in the listing tended to exclude certain other acts by implication. We reasoned that the listed examples seemed intended to apply to witnesses and defendants, not attorneys. In support of this conclusion, we observe that the Code, in Article 25, contains a special penalty provision for contempt by attorneys.[4]
The list of constructive contempts in article 23 includes "willful neglect or violation of duty by a clerk, sheriff, or other person elected, appointed, or employed to assist the court in the administration of justice;" and "willful disobedience of any lawful judgment, or mandate, writ, or process of court." In our view, the inclusion of these items as constructive contempt gave added weight to their implied exclusion as direct contempt in the illustrative listing of the latter. The general rule that criminal statutes are to be strictly construed was the final consideration in our determination that "the absence of an attorney, where the intention might be other than contumacious and where a wide range of defenses involving out-of-court circumstances might be presented, is much more susceptible of the article 24 constructive-contempt procedure than of the summary direct-contempt procedure." 371 So.2d at 255.
In holding petitioner in the instant case guilty of contempt of court, Judge Braniff told Mr. Merritt that he should have been in Judge Braniff's section of court rather than in another section at the appointed time.
*444 This indicates that the behavior prompting the contempt holding was Mr. Merritt's failure to appear in Section "B". In brief, the state suggests an alternative description of the behavior as a "violation of a rule of court adopted to maintain order and decorum in the courtroom." C.Cr.P. art. 21(8).[5]
Accepting arguendo the state's alternative rationale for the contempt, we then find another overlap between the direct and constructive contempt articles. (See Kidd, supra.) The quoted section of article 21 is analogous to the "willful disobedience of any lawful judgment, order, mandate, writ, or process of court" portion of article 23. As in Kidd, we hold that the inclusion of behavior as constructive contempt implies the exclusion of this same behavior as direct contempt. In so holding, we follow the mandate of R.S. 14:3 that criminal statutes are to be strictly construed.
Our finding that the present conduct falls within the scope of constructive contempt entitles petitioner to be tried on a rule to show cause that expressly alleges the facts constituting the contempt. The petitioner must be served with a certified copy of the motion and of the rule to show cause. He must also be allowed forty-eight hours to secure counsel and prepare his defense. C.Cr.P. art. 24. These procedural safeguards do not attach to direct contempt because all the facts constituting a direct contempt are within the knowledge of the court.
In Kidd, we also addressed the question of who should conduct the constructive contempt rule to show cause in that case on remand. We held that the hearing should be before a judge other than the one toward whom the behavior was directed, noting:
"In Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), the United States Supreme Court held that where contemptuous conduct is of the sort likely to provoke a trial judge and embroil him in personal controversy with the defendant, and where summary punishment procedures are not used, the contempt trial should preferably be heard by another judge. Not only the possibility of actual bias on the part of the trial judge, but also the possibility of the appearance of bias, should be taken into account." 371 So.2d at 256 (emphasis in the original).
Considering not only the possibility of actual bias on the part of the trial judge, but also the possibility of the appearance of bias, it would be better for the appearance of justice for another judge to try the instant charge of contempt. In this regard, we note that the attorney and the trial judge have indeed apparently been engaged in some sort of personal controversy. This is not an isolated instance of conflict between petitioner and this trial judge. See 385 So.2d 257 (La.1980); 385 So.2d 271 (La.1980); 394 So.2d 267 (La.1980). In fact in the record the trial judge stated that petitioner had disregarded orders *445 of the court for the "twelfth time". On remand, therefore, the rule to show cause is to be held before another judge of the Criminal District Court.

Decree
Petitioner's conviction and sentence for contempt are therefore set aside and the case is remanded for a hearing on a rule to show cause for constructive contempt in accordance with the provisions of C.Cr.P. art. 24.[6] The new hearing is to be held before a judge other than the one whose ruling we here reverse.
REVERSED AND REMANDED.
NOTES
[1] The transcript from August 5, 1980, contains the following:

"BY MR. MERRITT: When do I report for the court to decide?
"BY THE COURT: Tomorrow morning at 10:00 o'clock.
"BY MR. MERRITT: I'll be here. Thank you.
"BY THE COURT: Be on time.
"BY MR. MERRITT: I have a trial incidently in Section "F", but I'll be here.
"BY THE COURT: You better be here before you go to trial down there.
"BY MR. MERRITT: I have a trial in Section "F". I'll honor that subpoena, but I will be here.
"BY THE COURT: Before 10:00 o'clock.
"BY MR. MERRITT: I'll step in before 10:00. May I be excused, Your Honor.
"BY THE COURT: Yes, you may.
"BY MR. MERRITT: Thank you."
[2] In pertinent part Article 21 reads:

"A direct contempt includes, but is not limited to, any of the following acts:
(1) Contumacious failure, after notice, to appear for arraignment or trial on the day fixed therefor;
(2) Contumacious failure to comply with a subpoena or summons to appear in court, proof of service of which appears of record;
(3) Contumacious violation of an order excluding, separating, or sequestering a witness;
(4) Refusal to take the oath or affirmation as a witness, or refusal of a witness to answer a nonincriminating question when ordered to do so by the court;
(5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
(6) Breach of the peace, boisterous conduct, or violent disturbance tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
(7) Use of insulting, abusive, or discourteous language by an attorney or other person in open court, or in a motion, plea, brief, or other document, filed with the court, in irrelevant criticism of another attorney or of a judge or officer of the court;
(8) Violation of a rule of the court adopted to maintain order and decorum in the court room; or
(9) Contumacious failure to attend court as a member of a jury venire or to serve as a juror after being accepted as such when proof of service of the subpoena appears of record."
[3] The pertinent portion of Article 23 reads:

"A constructive contempt includes, but is not limited to any of the following acts:
(1) Willful neglect or violation of duty by a clerk, sheriff, or other person elected, appointed, or employed to assist the court in the administration of justice;
(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of court;
(3) Removal or attempted removal of any person or of property in the custody of an officer acting under the authority of a judgment, order, mandate, writ, or process of the court;
(4) Unlawful detention of a witness, the defendant or his attorney, or the district attorney, while going to, remaining at, or returning from the court;
(5) Improper conversation by a juror or venireman with any person relative to the merits of a case which is being, or may be, tried by a jury of which the juror is a member, or of which the venireman may become a member; or receipt by a juror or venireman of a communication from any person with reference to such a case without making an immediate disclosure to the court of the substance thereof;
(6) Assuming to act as a juror, or as an attorney or other officer of the court, without lawful authority;
(7) Willful disobedience by an inferior court, judge, or other official thereof, of the lawful judgment, order, mandate, writ or process of an appellate court, rendered in connection with an appeal from a judgment or order of the inferior court, or in connection with a review of such judgment or order under a supervisory writ."
[4] Article 25 provides:

"A person may not be adjudged guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law.
"Except as otherwise provided in this article, a court may punish a person adjudged guilty of contempt of court in connection with a criminal proceeding by a fine of not more than five hundred dollars, or by imprisonment for not more than six months, or both.
"When an attorney is adjudged guilty of a direct contempt of court the punishment shall be limited to a fine of not more than one hundred dollars, or imprisonment for not more than twenty-four hours, or both; and, for any subsequent direct contempt of the same court by the same offender, a fine of not more than two hundred dollars, or imprisonment for not more than ten days, or both.
"A justice of the peace may punish a person adjudged guilty of a direct contempt of court by a fine of not more than ten dollars, but not by imprisonment.
"When a contempt of court consists of the omission to perform an act which is yet in the power of the person charged with contempt to perform, he may be imprisoned until he performs it, and in such a case this shall be specified in the court's order."
[5] The state then submits "that C.Cr.P. art. 21(8) must be considered in pari materia with Rules VII and IX of the Rules of the Criminal District Court for the Parish of Orleans.

Rule VII, entitled `Attorney's Presence in Court', provides, in pertinent part as follows:
Section 1. Attorneys having business in Court shall report to the appropriate Section of Court prior to the opening of Court, and inform the Minute Clerk of their presence. (Emphasis supplied).
Rule IX, entitled `Security', provides as follows:
To minimize interference with and disruption of the conduct of the Court's business and affairs, to promote the decorum and the dignity with which the Court's business and affairs should be conducted and to provide more effective security in the building in which the Court in housed, all persons entering the Criminal District Court building may be requested to submit to a reasonable inspection of their personal belongings by duly authorized personnel. Any person who refuses to submit to a reasonable inspection will not be permitted to remain in the building. Attorneys, defendants, and witnesses are subject to being in contempt of Court for their failure to timely appear, although excluded. Any attorney who refuses to present his briefcase or other object and any person who refuses to present for inspection any personal belongings may be permitted entry upon surrender of these belongings to authorized personnel to be retrieved upon departure from the building. (Emphasis supplied)"
[6] An attorney found guilty of constructive contempt can be sentenced to a maximum of six months imprisonment and a fine of five hundred dollars because the special lower penalties for attorneys apply only to direct contempt. C.Cr.P. art. 25. However, petitioner may not be penalized for exercising his right of review and therefore, on remand, may be sentenced to no more than his original sentence: a fine of one hundred dollars, in default of which to serve twenty-four hours in the parish prison. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).