# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 03-254

TRAVIS R. MCKEE

VERSUS

CELESTE GRIFFEN MCKEE

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**THIRTY-SIXTH JUDICIAL DISTRICT COURT**
**PARISH OF BEAUREGARD, NO. C-96-608 "B"**
**HONORABLE HERMAN I. STEWART, PRESIDING**

**\*\*\*\*\*\*\*\*\*\*\*\*\***
**SYLVIA R. COOKS**
**JUDGE**
**\*\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Sylvia R. Cooks, and Billy H. Ezell, Judges.

**REVERSED.**

Charles A. "Sam" Jones, III
P.O. Box 995
DeRidder, Louisiana 70634
(337) 463-5532
**COUNSEL FOR APPELLANT:**
    Scott Westerchil

**COOKS, Judge**.

## STATEMENT OF THE CASE

Attorney, Scott Westerchil, appeals from a Judgment of Contempt rendered against him by the Honorable Herman I. Stewart. The facts leading to the judgment are as follows. Mr. Westerchil was retained by Celeste Griffin McKee (now Elliot) to respond to a Modification of Custody petition filed by her ex-husband. Mr. Westerchil filed an Answer and Reconventional Demand on her behalf on March 20, 2001. Trial on the matter was set for July 19, 2001 and both parties, with counsel, made appearances. A stipulation was reached and judgment was rendered on July 19, 2001and signed on March 14, 2002.

On July 29, 2002 Mr. McKee filed a rule against his ex-wife, Celeste Elliot, for failure to abide by the custody judgment. Service of process was made on Celeste Griffin McKee and a hearing was set for September 5, 2002. On August 8, 2002, Ms. Elliot spoke to Mr.Westerchil about representing her at the September 5, 2002 hearing. A fee was discussed but Ms. Elliot left Mr. Westerchil's office without retaining him. Ms. Elliot called Mr. Westerchil on September 4, the day before the hearing, to ask if she was required to be in court the next day. Mr. Westerchil advised her to attend the hearing and reminded her she had not made any arrangements to retain him. Mr. Westerchil advised Ms. Elliot he would attempt to reach opposing counsel to inquire about a continuance. He was unable to reach opposing counsel. He called Ms. Elliot to inform her he was unable to reach opposing counsel and to inform her he had a trial in Vernon Parish and would be unable to attend the hearing. He again reminded her she had not retained him as counsel on this matter. Ms. Elliot appeared, unrepresented, in court on September 5, 2002 and informed the court that she did not know that Mr. Westerchil was not going to appear in court until the day

2

before the hearing. The judge continued the case and ordered a rule to show cause why Mr. Westerchil should not be held in contempt of court for failure to appear in court. A hearing was held on September 23, 2002. Mr. Westerchil was the sole witness. The following exchange occurred between the trial judge and Mr. Westerchil:

THE COURT:

You remained as attorney of record in the case, did you not?

MR. WESTERCHIL:

That's correct. I did not file any motions to withdraw after the hearing set in June or July of 2001.

THE COURT:

And you had knowledge, you had actual knowledge of the hearing?

MR. WESTERCHIL:

I was informed on August 8th, when the client came in, that there was a hearing set for September 5th; that's correct.

THE COURT:

You did not file a motion for a continuance, is that right?

MR. WESTERCHIL:

No, sir.

THE COURT:

I am sure - -

MR. WESTERCHIL:

And if I can explain. The reason that I didn't is because when the – when Ms. Elliot left the office on August 8th, she was fully advised that in order for me to engage my services to come and defend her rule, that it would be necessary for her to pay me in order to do so. She asked me if I would make payment arrangements with her, which I said certainly I would but I needed some money for court costs, number one, to file her rule to modify the custody, as well as for some money to pay as an initial down payment toward my fee in order for me to be there.

3

THE COURT:

I understand those things, Mr. Westerchil, having practiced law for some 30 years myself. But those things are matters between yourself and your client. This Court takes the position that as long as an attorney is attorney of record and takes no action to withdraw as attorney of record and has actual knowledge of a hearing in the case and does not file either a motion to withdraw or a motion for continuance, that he is breaching an obligation to the Court. Although there are, perhaps, extenuating circumstances, the Court finds that you are in contempt of court for failure to appear on September 5, 2002, for not having filed a motion for continuance and not having filed a motion to withdraw.

The trial judge fined Mr. Westerchil $100.00 without court costs or twenty-four hours in the Beauregard Parish Jail. Mr. Westerchil files this appeal. Two issues are presented for our review: whether an attorney, who has not been served with a subpoena, has a duty to appear in court or file a motion to withdraw in a case when judgment has been rendered in the matter for which he was retained and whether the attorney cited for contempt is entitled to a hearing before an impartial judge. For the reasons assigned below, we reverse the decision of the trial judge.

## LAW AND DISCUSSION

Contempt of court proceedings in civil cases are governed by La.Code Civ.P. art. 221, et seq. which defines contempt as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." The Code provides for two kinds of contempt, direct and constructive. Direct contempt of court is defined in La.Code Civ. P. art. 222 as "one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." Constructive contempt is defined in La.Code Civ.P. art. 224 as "any contempt other than a direct one" and this article lists the following acts which constitute a constructive contempt of court:

4

(1) Wilful neglect or violation of duty by a clerk, sheriff, or other person elected, appointed, or employed to assist the court in the administration of justice;

(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court; . . . .

While direct contempt may be tried summarily, constructive contempt must be tried on a rule to show cause and "before a judge other than the one toward whom the contumacious behavior was directed." *Kidd v. Caldwell*, 371 So.2d 247, 256 (La.1979). The reason for this rule was stated by Justice Tate, citing *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697 (1974):

[W]here contemptuous conduct is of the sort likely to provoke a trial judge and embroil him in personal controversy with the defendant, and where summary punishment procedures are not used, the contempt trial should preferably be heard by another judge. Not only the possibility of actual bias on the part of the trial judge, but also the possibility of the *appearance* of bias, should be taken into account.

*Id.*

The burden of proof in a civil contempt proceeding is by a preponderance of the evidence and appellate review is the manifestly erroneous standard. *Davis v. Harmony House Nursing Home*, 35,080 (La.App. 2 Cir. 10/31/01), 800 So.2d 92, *writ denied*, 01-3162 (La. 2/22/02), 810 So.2d 1143. The failure of an attorney to appear in court is considered a constructive rather than direct contempt and the attorney must be afforded a hearing before an impartial judge. *Kidd,* 371 So.2d 247; *In re Merritt*, 391 So.2d 440 (La.1980); *See also State v. Minnieweather*, 587 So.2d 1190 (La.App. 2 Cir. 1991), where an attorney was found guilty of constructive contempt for failure to appear before a grand jury pursuant to a subpoena.

In *Kidd,* a heated exchange took place between the judge and the defense attorney in open court and later in chambers when the judge refused to allow the defense attorney to file motions prior to completing jury selection. The defense

attorney, then, filed a motion to recuse the judge which was denied. When the judge recessed court for the morning, the defense attorney said "he saw little reason to continue with the trial" and left the courtroom. He failed to appear at the designated hour in the afternoon. The judge issued a summons for his appearance which he ignored. The trial judge found him guilty of two courts of direct contempt and imposed a $100.00 fine. The Louisiana Supreme Court affirmed one count of direct contempt. However, with regard to the failure of the attorney to appear in court, the court reversed, finding the failure of an attorney to appear in court fell within the constructive contempt statute stating:

> Thus, a violation of an "order" or "mandate" of the court, proof of service of which did not appear in the record, by an attorney--a person employed to assist the court in the administration of justice--is clearly contemplated as a constructive contempt. This inclusion as a *constructive* contempt gives added weight to its implied exclusion as a *direct* contempt in the illustrative listing of the latter.

*Id*. at p. 255.

Because the court found the attorney's actions fell within the constructive contempt provision he was entitled to a full hearing in front of an impartial judge. Of significance in *Kidd,* is the fact that the attorney ignored a summons to appear in court.

In *Merritt*, 391 So.2d 440, an attorney failed to appear in court on a writ of habeas corpus which the attorney filed on behalf of his client. The trial judge tried him summarily and found him guilty of direct contempt and sentenced him to pay a fine of $100.00 or twenty-four hours in the parish jail. The Louisiana Supreme Court found the failure of an attorney to appear in court falls within either "wilful neglect or violation of duty by a . . . person . . . employed to assist the court in the administration of justice" or "wilful disobedience of any lawful judgment, or mandate, writ, or process of court." *Id.* at 443. Citing *Kidd*, the court held the

6

attorney's failure to appear is a constructive, not direct, contempt, and remanded for a full hearing in front of an impartial judge.

In the present case, since Mr. Westerchil was not served with an "order, mandate, writ, or process of the court" which commanded his appearance on Ms. Elliot's behalf, La.Code Civ.P. art. 224(2) does not apply. Ms. Elliot alone was served, presumably because the matter for which Mr. Westerchil was retained was disposed of. Mr. Westerchil draws our attention to La.Code Civ.P. art. 1313(A) which provides in relevant part:

> A. Except as otherwise provided by law, every pleading subsequent to the original petition . . . may be served as provided in this Article, may be served either by the sheriff or by:
>
> (1) Mailing a copy thereof to the counsel of record . . .

However an exception is provided to this service rule in La. Code Civ. P. art. 1314 (2)(b) which provides in relevant part:

> [S]ervice may not be made on the counsel of record after a final judgment terminating or disposing of all issues litigated has been rendered, the delays for appeal have lapsed, and no timely appeal has been taken.

After a final judgment is rendered and no appeal taken, a litigant may not assume a former attorney of record is the attorney on a new and separate cause of action.

The issue presented is whether Mr. Westerchil owed a duty to the court to appear at the hearing and whether he engaged in "[w]ilful neglect or violation" of that duty in violation of La.Code Civ.P. art. 224(1). The trial court imposed a duty on Mr. Westerchil to either file a formal motion to withdraw in the case or file a motion for a continuance. Absent a subpoena or other court order, we are aware of no law which imposes such a duty upon an attorney under the penalty of incurring a contempt of court judgment. While we are mindful of the trial judge's interest in the

7

orderly administration of his docket, we do not find Mr. Westerchil wilfully neglected his duty. Even assuming Mr. Westerchil should have, as a matter of good legal etiquette, filed a motion to withdraw, his failure to appear at the hearing because of a prior commitment cannot be defined as "wilful." Mr. Westerchil fulfilled his obligation to Ms. Elliot upon resolution of the matter for which he was hired. After the final judgment, there were no other issues pending between the rendition of the July 19, 2001 judgment and the subsequent filing of the Rule for Contempt a year later in July 2002. Although domestic matters present a slightly different situation with regard to continuing jurisdiction by the court and open-ended judgments, this distinction alone is not enough to place a duty upon every attorney to formally withdraw from the case or risk incurring a contempt citation. The result in this case may have been different had Mr. Westerchil been served with a subpoena to appear on Ms. Elliot's behalf. However, he received no order to appear in court and was not retained by Ms. Elliot to represent her. We do not find he breached any obligation to the court. The judgment of the trial court finding Mr. Westerchil in contempt of court is reversed. The issue of whether Mr. Westerchil is entitled to have his case heard by an impartial judge is rendered moot by our decision to reverse the judgment of contempt.

## DECREE

Based on the foregoing, we reverse the decision of the trial court finding Mr. Westerchil in contempt of court for failure to appear at the September 5, 2002 hearing.

**REVERSED.**