Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,462-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                              Appellee

versus

QUANITTIA DENNIS                               Appellant
(IN RE: MICHELLE A. CHARLES
CONTEMPT PROCEEDINGS)

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 21CR31639

Honorable Amy Burford McCartney, Judge

* * * * *

DICK "DAVE" KNADLER                    Counsel for Appellant
                                      Michelle A. Charles

CHARLES BLAYLOCK ADAMS                Counsel for Appellee
District Attorney

EDWIN L. BLEWER, III
LISA D. LOBRANO
Assistant District Attorneys

* * * * *

Before PITMAN, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

Attorney Michelle A. Charles was found to be in constructive contempt of court for her failure to appear at a criminal trial. Charles was sentenced to serve 22 hours in the DeSoto Parish jail. For the following reasons, we affirm.

## FACTS

On October 25, 2022, Michelle Charles was scheduled to appear in court for the misdemeanor trial of her then-client, Quanittia Dennis. The trial was scheduled to begin at 9:00 a.m. Dennis and the 21 witnesses subpoenaed by Charles were present; however, neither Charles nor her co-counsel were present, and neither had called the trial court, opposing counsel, or Dennis to apprise them of their absence or tardiness. When the trial court discovered Charles and her co-counsel were not present, the following colloquy occurred:

THE COURT:      Ms. Dennis, where are your counsel?

[DENNIS]:      I don't know.

THE COURT      Have you spoken with them?

[DENNIS]:      Well, I spoke with her . . . day before yesterday. She asked me to fire her.

THE COURT:      She asked – let me get you to raise your right hand for me, please.

[*Dennis was sworn in by the Deputy Clerk of Court*]

THE COURT:      Okay. *** So, you said that she asked you to fire her. Who is she?

[DENNIS]:      Michelle Charles. I know, on two occasions, she asked you to withdraw her off the case. I'm asking for a strategy. I still don't know what the strategy is. I filed motions to the Attorney General to ask for a [quash] – motion to [quash] because I don't

have effective counsel. In June, you asked both of my attorneys are they gonna be effective to do my trial. They both told you yes. You asked them, but I don't have an attorney, and I don't know what's gonna happen.

THE COURT: Okay. So, when you talked to her *** on Sunday?

[DENNIS]: Yes, I called her and I text[ed] her. Then I called her again, and I text[ed] her again.

THE COURT: And that's all Ms. Charles, right?

[DENNIS]: Yes.

THE COURT: Okay. And so, she asked you to fire her. Did you, in fact, fire her?

[DENNIS]: No, I didn't. I told her to ask you.

THE COURT: Okay. And then have you spoken to Ms. Page?

[DENNIS]: Ms. Page told you that she wasn't coming. This – they [were] serious. She was serious. So.

THE COURT: Well, I mean, Ms. Page – we set today's court date –

[DENNIS]: Well –

THE COURT: Because this was a date when Ms. Page was, in fact, available. So –

[DENNIS]: Well, you can see they [are] not here.

THE COURT: Okay. So, have you spoken – when's the last time you spoke with Ms. Page? When you were last here –

[DENNIS]: Uh-huh.

THE COURT: And she appeared by Zoom?

[DENNIS]: Uh-huh.
                              ***

2

| THE COURT: | Okay. And there has – they have filed motions to withdraw, which I had denied. *** None of those motions suggested that you fired them, and so I just wanna make sure *** you did not fire them. |
|---|---|
| [DENNIS]: | No. I didn't fire them. *** But they – I mean, they – it's like – I ain't never seen nothing like this, but, no, they [are] not here. They ain't here. *** |
| THE COURT: | But I do note that Ms. Charles sent an email to my office yesterday, that would be October 24, 2022 *** In which she mentioned that she had received so much discovery that she had not reviewed it yet, I believe. Let's see. She says, "This case has two jump drives of discovery with numerous witnesses," which would – have you been made aware that there are two jump drives of discovery? *** |
| [DENNIS]: | I'm not – I didn't see the two jump drives of discovery. *** |
| THE COURT: | I'm going to place the email in the record for purposes of today's hearing. Is there – I mean, obviously, we can't proceed. *** |

At that point, the State orally requested a "writ of attachment" be issued for Charles and expressed its intent to file a rule for constructive contempt of court for Charles's failure "to follow the Court's orders and failing to appear."[1]  The trial court issued a writ of attachment for Charles, ordering the DeSoto Parish sheriff to "safely keep and detain" Charles in the parish jail, without bond, and "produce her in open court."

Later that day, the State filed a "Rule for Contempt," alleging Charles should be held in constructive contempt of court, pursuant to La. C. Cr. P.

---

[1] As noted above, Charles's co-counsel did not appear for trial. However, the State did not seek a writ of attachment or file a rule for contempt with regard to co-counsel.

art. 23(2), for her failure to follow the trial court's orders and to appear for her client's trial. The trial court issued an order setting the rule to show cause for November 16, 2022.

Subsequently, Charles appeared at the DeSoto Parish Courthouse on October 25, 2022, and she was detained and later brought into court for a special hearing. Charles was served with notice of the constructive contempt charge, and the colloquy was as follows:

THE COURT: Okay. Ms. Charles, anything?

MS. CHARLES: Judge, I just – I do wanna apologize to the Court for being late. I was – left home at four o'clock this morning, in hopes to get here at 9:00, because it is a four hour and twenty-seven-minute drive. I stopped in Alexandria to use the bathroom, which probably delayed me about thirty – thirty to forty-five minutes getting here. There was rain on Atchafalaya Basin Bridge. That was – it was a really bad rain storm, in pitch black weather coming here. So, I do apologize to the Court for being late. It was never my intention to circumvent the Court's order to be present, Judge.

THE COURT: Well – and, of course, Ms. Charles, you did not contact my office to say that you were running late. Had you done that, I could have recessed court, and we could've reconvened when you would have arrived. However, you did not do that. No one in my office was contacted. You knew, well before nine o'clock, that you were not going to be here on time, and you chose not to notify anyone of that. In light of that, not only did your twenty-one witnesses show up, in addition, to others, but the State had witnesses here, as well. So, we will address all of that when we come back for the contempt hearing.

***

4

Charles was formally served with notice of the November 16, 2022, hearing date.

On November 9, 2022, Charles filed a "Motion to Correct Illegal Sentence Pursuant to [La. C. Cr. P. art.] 881.5," motion to quash the rule for contempt, and a motion for new trial. The following day, and prior to the trial court's ruling on her motions, Charles filed an application for supervisory review and request for a stay, requesting this Court to exercise its supervisory authority to vacate her "sentence" and to stay the proceedings for constructive contempt of court. By order dated November 15, 2022, this Court denied Charles' application, finding she failed "to show there had been a hearing, a finding of guilt, or the imposition of any sentence regarding the trial court's order that a writ of attachment." Thereafter, the trial court denied Charles' motions, finding "there has been no trial."

A rule for contempt was held on November 16, 2022. During the hearing, Charles, through counsel, objected to the introduction of her email to the trial judge's secretary, arguing it was hearsay and the record is devoid of proof she sent the email. The trial court overruled the objection, stating, "The email is certainly a statement against interest in that it was sent by Ms. Charles to Candice Williams in my office, who is my secretary. And the Court, in fact, is the one who introduced it into the record on October the 25th."

Charles also objected to the trial court's questioning of Dennis on the morning of October 25th, arguing Dennis was questioned "without the presence of counsel," she "was not apprised of her rights per *Miranda*," and "she was sworn in and then answers were then elicited to testify against her

own counsel[.]" Charles argued Dennis "made answers that were against her interest, and testified to things that were confidential communications between her and Ms. Charles." The State opposed the argument, noting "The statement that defense counsel is talking about are in no way against Ms. Dennis' interest in any way." The State also argued, "Ms. Dennis is the one that controls attorney-client privilege, not Ms. Charles." The trial court overruled Charles's objection, stating:

> It's due to [Charles's] refusal to show up on time or to let the Court know that she was not going to be able to make it on time. That's the entire reason that we're here today. Ms. Dennis – there was not a need for her to be *Mirandized*. She was not testifying against her own interest. You don't want the statements in because they're against your client's interest *** however, that is not a valid basis for the objection you're making. *** Ms. Dennis in fact controls the attorney-client privilege. So, to the extent that Ms. Dennis desires to waive that privilege as to some measure of communications that she had with Ms. Charles, she's capable of doing that. And this is in fact what she chose to do that day.
> ***

Further, Charles argued she was not given notice a writ of attachment would be issued. Thereafter the following colloquy occurred:

THE COURT: This is in line with a bench warrant. It's not the Court's obligation to contact a person who has notice to appear. They were given notice. That's why I don't need to contact them. *** Are criminal defendants given notice that a bench warrant has issued, which will cause them to be taken to jail?

[DEFENSE COUNSEL]: Your Honor, that's a bench warrant. That's not a writ of attachment.

THE COURT: It's the same.
***

[DEFENSE COUNSEL]: *** This was different. This was a writ of attachment. Also, Your Honor *** no notice was given to Ms. Charles that a writ

6

of attachment was going to be issued [and] there was another attorney who was co-counsel in that case.  Nothing was done to co-counsel.  So, we're arguing it was all selective prosecution against Ms. Charles.

***

[W]ell, what had happened after the writ of attachment ordering the jailing of Ms. Charles, uh, she was in effect already punished for direct contempt of this Court.  And we're arguing the fact that just by merely trying to serve her with a Rule to Show Cause later that morning for constructive contempt doesn't cure the fact that double jeopardy is already attached per [F]ifth [A]mendment.

***

We're also pointing out, Your Honor, that everything started about her failure to appear at that hearing, not only was she the only attorney disciplined or jailed, nothing was issued against co-counsel who didn't appear at all.  *** That was direct contempt.  That is not constructive contempt.  Your Honor, for Ms. Charles, and the Court even admitted, she was – after she was jailed she was here.  She made statements to the Court without counsel being present to represent her. And everything that they're arguing that lead up to that morning of October 25th was she was punished for it by the writ of attachment ordering her jailed.  With that being said, that is the subsequent intervening cause, which would invalidate anything where Ms. Charles would be convicted of constructive contempt.  For everything that has been argued, everything has been introduced into evidence, has to do with her failure to appear.  That is direct contempt, Your Honor, for which she has already been punished.

***

THE COURT:    Okay.  And I also want to correct – in the briefing there was a reference *** that no one – no attorney has ever been jailed in the Forty-Second Judicial District Court for behavior of this sort, and that is inaccurate.  And in fact, there have been two others who were jailed within the last year in the Forty-Second Judicial District Court.  So, I do

7

> want to make sure that that is also on the
> record, that this is not treatment that is
> specific or isolated to Ms. Charles.

The trial court denied Charles's motions and took the constructive

contempt matter under advisement. The court reconvened December 7,

2022. After noting appearances, the trial court found Charles committed

constructive contempt of court and issued a written "Order," stating:

> [The Court] finds that despite the fact that attorney Michelle
> Charles had been advised by the Court on more than one
> occasion that the criminal trial in the matter of [*State v.
> Quanittia Dennis*] would not be continued, Ms. Charles failed
> to prepare for, attend, and participate in the trial of her client,
> Ms. Quanittia Dennis.
>
> Specifically, Ms. Charles failed to prepare for trial as confirmed
> by her email, dated October 24, 2022, wherein she stated, "I
> will not try this case on Tuesday [October 25, 2022] without
> being properly prepared for trial." Notwithstanding her lack of
> preparation, Ms. Charles subpoenaed twenty-one (21) witnesses
> to personally appear in court on October 25, 2022, at 9:00 a.m.
> Most, if not all, of the subpoenaed witnesses were present in the
> courtroom on the appointed day and time. Ms. Charles's lack
> of preparation in the matter of *State v. Dennis* is particularly
> egregious considering that she first appeared in the matter on
> Ms. Dennis' behalf on September 16, 2021, more than a year
> before the trial date.
>
> While the State's Rule for Contempt does not address the direct
> contempt, which resulted from Ms. Charles's failure to appear
> for the trial setting, it is important to note that, even if she had
> appeared for trial, the Court likely could not have proceeded
> with trial due to Ms. Charles's email the prior day declaring
> herself unprepared and, therefore, ineffective.
>
> Further, based upon the statements of Ms. Dennis on October
> 25, 2022, attorney Charles sought to avoid trial by asking Ms.
> Dennis to fire Ms. Charles on October 23, 2022. According to
> Ms. Dennis, she did not fire Ms. Charles and, therefore, Ms.
> Charles was tasked with continuing her representation of Ms.
> Dennis on October 25, 2022.
>
> ***

Charles waived sentencing delays, and the trial court sentenced her to

serve 22 hours in the parish detention center, stating the "22-hour sentence

represents one hour for each of the witnesses that Ms. Charles subpoenaed to appear for trial, as well as one hour for Ms. Dennis, who was forced into the unfortunate position of appearing for the criminal trial without the benefit of counsel." Charles was ordered to serve her sentence before January 15, 2023.[2]

Charles appeals.

## DISCUSSION

Charles contends the district court erred in finding her guilty of constructive contempt on December 7, 2022, after issuing a writ of attachment on October 25, 2022, and double jeopardy had attached. Charles argues her conviction and sentence should be vacated pursuant to the Louisiana Supreme Court's ruling in *State in the Interest of Panagoulopoulos*, 22-00559 (La. 5/3/22), 337 So. 3d 150. Charles also sets forth multiple arguments in which she asserts her constitutional rights were violated. Her arguments are summarized as follows:

- She received no notice a writ of attachment would be issued, and she was not afforded a hearing prior to her detainment pursuant to the writ of attachment.

- After the November 16, 2022 hearing concluded and Charles and her counsel exited the courtroom, the trial court allowed Dennis, who, by then was Charles's former client, to "testify." Dennis informed the court she had been "harassed by J. Florence and Michelle [Charles]" and received "death threats because they told people that I had y'all put her in jail."

- The issuance of the writ of attachment and order to detain her in the parish jail without bond was improper because her right to due process was abridged. She maintains she was "found guilty and jailed" without being afforded a

---

[2] In her brief, Charles asserts she "served her complete and entire [22]-hour sentence in the DeSoto Parish jail" in January 2023.

hearing and without any evidence of her willful violation of a court order. She asserts neither the State nor the trial court "made any attempt to contact [her] concerning her whereabouts once court started." Charles also contends her Sixth Amendment right to counsel was violated when the court issued the writ of attachment without ensuring she was represented by counsel.

- The trial court used the evidence adduced on October 25th to find her guilty of constructive contempt on December 7th, without taking any additional evidence. Additionally, the court jailed her "for being late," and did not allow her to defend herself. She was ordered to be jailed (pursuant to the writ of attachment) before the contempt hearing was conducted, which deprived her of her due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 2 of the Louisiana Constitution.

- Neither the trial court nor the State notified her she would be arrested if she appeared late. Further, no hearing was conducted prior to her arrest on the writ of attachment. Due process requires notice, an opportunity to be heard, and an impartial tribunal. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

- The trial court erred in denying her motion to quash the rule for contempt and her motion to stay the proceedings. She asserts when the writ of attachment issued, she was jailed without bond. Thus, she had been punished for her actions. Nevertheless, the trial court conducted a contempt hearing, found her guilty of the same offense for which the writ of attachment had been issued, and ordered her to be jailed again. As a result, Charles asserts she was convicted and sentenced twice for the same offense (being late for court).

- Her arrest and detainment violated her Eighth Amendment right against cruel and unusual punishment. She declares she was treated in an "arbitrary and high-handed manner," and the severity of her punishment was "degrading to the human dignity." Charles argues being jailed for showing up late for court is now a public record and could possibly affect her license to practice law. Such result would, again, violate the double jeopardy clause of the Fifth Amendment. See, *U.S. v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S. Ct. 1099, 79 L. Ed. 2d 361 (1984) (the prohibition on double jeopardy extends to civil sanctions when applied in a manner that is punitive in nature). Charles asserts when

the trial court ordered her arrested and jailed on the writ of attachment, the State was precluded from charging her with constructive contempt.

La. C.C.P. art. 371 provides:

An attorney at law is an officer of the court. He shall conduct himself at all times with decorum, and in a manner consistent with the dignity and authority of the court and the role which he himself should play in the administration of justice.

He shall treat the court, its officers, jurors, witnesses, opposing party, and opposing counsel with due respect; shall not *** otherwise impose upon *** the court.

For a violation of any of the provisions of this article, the attorney at law subjects himself to punishment for contempt of court, and such further disciplinary action as is otherwise provided by law.

La. C. Cr. P. art. 17 provides:

A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction. It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. A court has the power to punish for contempt.

Pursuant to La. C. Cr. P. art. 20, a contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C. Cr. P. art. 23 provides:

A constructive contempt of court is any contempt other than a direct one.

A constructive contempt includes, but is not limited to any of the following acts:

***
(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
***

11

In order to find a person guilty of constructive contempt, it is necessary for the trier of fact to find the contemnor violated the order of the court intentionally, knowingly, and purposely, without justification. *In re T.S.*, 45,194 (La. App. 2 Cir. 3/3/10), 32 So. 3d 1026; *State v. Brooks*, 42,846 (La. App. 2 Cir. 12/05/07), 972 So. 2d 1197. Willful disobedience means a consciousness of the duty to obey and an intent to disregard that duty. *Dauphine v. Carencro High Sch.*, 02-2005 (La. 4/21/03), 843 So. 2d 1096. In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order; the burden of proof is beyond a reasonable doubt. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988); *Billiot v. Billiot*, 01-1298 (La. 1/25/02), 805 So. 2d 1170.

Criminal contempt is a crime, and the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal proceeding against conviction of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the contempt charge. *Billiot v. Billiot*, *supra*; *R.J.S.,* 493 So. 2d 1199 (La. 1986). On appellate review of criminal contempt, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the contempt charge was proved beyond a reasonable doubt. *Id*.

A proceeding for contempt in refusing to obey the trial court's orders is not designed for the benefit of the litigant, though infliction of a punishment may inure to the benefit of the mover in the rule. The object of the proceeding is to vindicate the dignity of the court. *Davidson v. Castillo*,

12

52,727 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1157, *writ denied*, 19-1472 (La. 11/12/19), 282 So. 3d 233; *Martin v. Martin*, 37,958 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1081, *writ not cons.*, 04-0481 (La. 3/12/04), 869 So. 2d 807.  The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the court's order, and its decision will only be reversed when the appellate court can discern an abuse of that discretion.  *Martin v. Martin*, *supra*; *Mizell v. Mizell,* 37,004 (La. App. 2 Cir. 3/07/03), 839 So. 2d 1222.

The federal and state constitutions both provide that no person shall twice be put in jeopardy of life or liberty for the same offense. *See* U.S. Const. amend. V; La. Const. Art. I, § 15.  The federal and state double jeopardy provisions protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *State v. Grasser*, 22-00064 (La. 6/1/22), 346 So. 3d 249; *State v. Hill*, 54,644 (La. App. 2 Cir. 9/21/22), 348 So. 3d 1283.

Double jeopardy exists in a second trial only when the charge in that trial is identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial.  La. C. Cr. P. art. 596.  When the same act or transaction constitutes a violation of two distinct statutory provisions, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932).

This is not a matter of first impression. Our review has revealed other cases in which a writ of attachment or an instanter subpoena was issued to compel an attorney's appearance in court. *In re Merritt*, 391 So. 2d 440 (La. 1980), a defense attorney failed to appear for a hearing on a writ of habeas corpus he had filed on behalf of his client. The trial court issued a writ of attachment for his arrest. A short time later, a deputy saw the attorney on another floor in the courthouse. When the attorney refused to accompany the deputy to the appropriate courtroom, the deputy handcuffed him and escorted him to the courtroom. The trial court found he was in direct contempt of court and ordered him to pay a fine of $100, in default of which he was to serve 24 hours in the parish jail. The Supreme Court reversed the finding of direct contempt and remanded the matter for a rule to show cause, finding the attorney's conduct "falls within the scope of constructive contempt." *Id.*, at 444.

In *Kidd v. Caldwell*, 371 So. 2d 247 (La. 1979), an attorney, who was representing a defendant in a felony trial, failed to appear in court following a recess. The trial court ordered the courthouse searched, and the attorney was not found in the building. Thereafter, the court issued a summons ordering the attorney to appear at 4:00 p.m., or within two hours of service, to answer charges of contempt. The attorney failed to appear. The court found him guilty of two counts of direct contempt (one for his conduct in court and one for his failure to appear in court following the recess). The court imposed a fine and a 24-hour jail sentence for the first count, and a fine and a sentence of 10 days in the parish jail "or until further orders of this Court." The Supreme Court affirmed the convictions and sentences. On

rehearing, the Court confirmed its ruling on the first count of direct contempt. With regard to the second conviction for direct regarding the attorney's failure to appear in court, the Court set aside the conviction and sentence and remanded for a rule to show cause for constructive contempt.

In *Leimkuhler v. Leimkuhler*, 07-2397 (La. App. 1 Cir. 5/2/08), 2008 WL 2068071 (unpublished), the attorney was representing the wife in a contested divorce proceeding. The matter came before the court on October 16, 2006; however, counsel was not present when the case was called. The court directed the bailiff to "sound the building" to attempt to locate counsel; however, the bailiff was unable to locate counsel. The court issued an instanter subpoena to compel the attendance of counsel, yet counsel could not be found. Thereafter, the court issued a rule for contempt of court and ordered the attorney to show cause why she should not be held in contempt of court for her failure to appear. Subsequently, counsel was found to be in constructive contempt and sentenced to serve 30 days in the parish jail. The court of appeal found the evidence was sufficient to establish constructive contempt of court, stating:

> At the hearing and in brief, Ms. Tessier admits that when she did not see the client at the courthouse by 10 a.m. she left "thinking the client had settled things out with her husband." In brief, Ms. Tessier attempts to justify her departure with a litany of excuses, including the following: 1) Her representation of Ms. Leimkuhler was pro bono, 2) the representation was more involved than she first anticipated that it would be, 3) Ms. Leimkuhler did not contact Ms. Tessier to advise Ms. Tessier which witnesses would be at the hearing, and 4) she thought that Mr. and Mrs. Leimkuhler may have worked things out.
>
> On review, we find no error by the trial court in rejecting the explanations offered by Ms. Tessier. She admits that although she knew of the hearing, she left the courthouse before the case was called. She therefore was not present at the time of the hearing and failed to represent her client.

15

In *Carvajal v. George*, 07-2366 (La. App. 1 Cir. 5/2/08), 2008 WL 2065920 (unpublished), counsel for a party (again Ms. Tessier) failed to appear at a hearing in her client's criminal case. The trial court found her in contempt, stating, "[Y]ou were noticed for the [pauper hearing] and you failed to appear . . . whether you can contact your client or not, you as an officer of the court have an obligation to be present[.]" The court sentenced her to serve 30 days in the parish jail, suspended, and ordered her to pay the costs of the contempt proceedings. The court of appeal affirmed the conviction and sentence.

In *McKee v. McKee*, 03-254 (La. App. 3 Cir. 10/1/03), 856 So. 2d 135, an attorney represented a mother in a child custody matter and did not file a motion to withdraw after the matter was resolved. Thereafter, the father filed a rule against the mother for failing to abide by the custody agreement. The mother consulted with the attorney but did not retain him. After the attorney did not appear in court for the hearing, the trial court continued the case and ordered a rule to show cause why the attorney should not be held in contempt for failure to appear. The trial court concluded the attorney was in contempt of court "for failure to appear[,] for not having filed a motion for continuance, and not having filed a motion to withdraw." *Id*. at 137. The court of appeal reversed, finding La. C. C. P. art. 224 did not apply because the attorney "was not served with 'an order, mandate, writ, or process of the court' which commanded his appearance on [the mother's] behalf." The court reasoned the attorney had fulfilled his obligation to

represent the mother upon resolution of the matter for which he was retained.[3]

In support of her arguments, Charles relies on the Supreme Court's ruling in *State in Interest of Panagoulopoulos*, *supra*. In that case, the attorney left the courtroom after he was instructed to remain in court because his client's case would proceed to trial. He did not notify the trial judge or her staff he was leaving. The attorney was found to be in direct contempt of court, in violation of La. C. Cr. P. art. 21, for his failure to appear in court. The Supreme Court found the evidence was insufficient to support the conviction for direct contempt and vacated the conviction and sentence.

We find *State in Interest of Panagoulopoulos*, *supra*, is distinguishable from the instant case, as Panagoulopoulos was erroneously charged with *direct*, rather *than constructive*, contempt of court for his

---

[3] Our review of cases in other jurisdictions yielded similar results. For example, in *King v. State*, 400 Md. 419, 929 A. 2d 169 (2007), an attorney was representing a client in a criminal matter. The trial in the matter was scheduled to begin June 27, 2006. However, when the case was called, the client was present, but his attorney was not. The court issued a "contempt show cause" for the attorney, and contempt proceedings ensued. At the hearing on the contempt rule, the attorney admitted she was aware of a scheduling conflict; however, she did not "understand it was her responsibility to notify the court whether a jury was needed. She also stated she had called the court on the morning of the trial and "left a voice mail message informing the court that she would not be able to attend the proceeding[.]" The trial court found the attorney was in direct contempt of court, reasoning she "deliberately, intentionally, declined to show up." The attorney was ordered to pay a $2,500 fine and was placed on unsupervised probation for a period of two years, subject to certain conditions.

In *In re Hampton*, 919 So. 2d 949 (Miss. 2006), the attorney for a defendant in a civil matter failed to show up for a hearing. The trial court telephoned the attorney at her law office, on her cellular phone, and at her residence. The court also sent an employee to the business owned by the attorney's husband. The attorney's whereabouts remained unknown. The trial court issued a subpoena to compel the attorney and her client to appear at a hearing. Thereafter, a hearing was conducted, and the attorney was found to be in direct contempt for her "willful, deliberate, and contumacious" failure to attend the hearing. She was fined $100 and sentenced to serve three days in jail. The attorney appealed, asserting multiple constitutional deprivations. The Mississippi Supreme Court affirmed the conviction and sentence.

17

failure to appear, in direct contradiction to Louisiana's long-held jurisprudential rule: the failure of an attorney to appear in court is considered a *constructive*, rather than *direct*, contempt. *State v. Darrow*, 513 So. 2d 278 (La. 1987); *Kidd, supra*; *In re Merritt*; *supra*; *McKee, supra*. In the instant case, Charles was charged with constructive contempt for her failure to appear.[4]

Further, we see no merit to Charles' claims with regard to any deprivation of her constitutional rights. As a result of Charles' nonappearance, the trial court exercised its discretion by issuing a writ of attachment to secure Charles' presence in court after Charles failed to appear for the misdemeanor trial of her client. Charles received notice of the writ of attachment when she appeared later that morning, and she was brought before the court and notified of the rule for constructive contempt. Nothing in the law mandates Charles receive notice of the issuance of a writ of attachment prior to the writ being issued. Further, the issuance of the writ of attachment for Charles' failure to appear in court is not equivalent to the criminal charge of contempt of court or a finding of guilt thereof. At the time the writ of attachment was issued, Charles had not been charged with constructive contempt. Thus, the evidence of record reveals Charles was not

_____

[4] *See also Ex parte Sheffield*, 120 So. 3d 1091 (Ala. Civ. App. 2013). In *Sheffield*, the attorney was held in direct contempt of court for failing to appear at a scheduled hearing and was fined $100. The court of appeal reversed and remanded, stating, "[A]n attorney's failure to appear at a scheduled hearing generally subjects that attorney to a finding of constructive contempt, not direct contempt." *Id*. at 1096. Likewise, in *Quick v. State*, 699 So. 2d 1300 (Ala. Crim. App. 1997), the trial court erroneously found the attorney was in direct contempt for failing to appear at his client's sentencing "without good reason" and imposed a fine. The court of appeal reversed and remanded, finding the trial court erred in finding the attorney in direct contempt, rather than constructive, and imposing a fine without affording him with due process protections.

tried or punished twice for the same offense; consequently, jeopardy did not attach.

Additionally, the record demonstrates Charles knew the misdemeanor trial of her client, Ms. Dennis, was scheduled to begin October 25, 2022, at 9:00 a.m. In fact, she had subpoenaed 21 witnesses, most of whom were present when the case was called. It is undisputed Charles was not present to represent her client when the case was called. It is also undeniable Charles did not notify the court, the assistant district attorney, or her client she would not be present or she would be late.

Based on our review of this record, we find the evidence, when viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact to conclude beyond a reasonable doubt Charles intentionally, knowingly, and purposely, without justification, failed to appear at 9:00 a.m. for her client's trial. The facts establish Charles was conscious of her duty to appear in court to represent her client, intended to disregard her duty, and acted with intent to defy the authority of the court. Accordingly, we find no abuse of the trial court's great discretion in finding Charles was in constructive contempt of court for her failure to timely appear. This assignment lacks merit.

Charles also argues the trial court erred in placing her then-client, Ms. Dennis, under oath and inquiring about Charles' whereabouts. Charles asserts the court's actions constituted a "gross departure from proper judicial proceedings," and "the State took advantage of the testimony of the unrepresented Ms. Dennis and used her testimony (which divulged

19

privileged communications between attorney Ms. Charles and Ms. Dennis) against Ms. Charles[.]"[5]

A trial court has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to control the proceedings so that justice is done. La. C. Cr. P. art. 17. Where the law is silent, the court has the inherent authority to fashion a remedy which will promote the orderly administration of justice. *Id*.; *State v. Mims*, 329 So. 2d 686; *State v. Bowers*, 42,390 (La. App. 2 Cir. 9/19/07), 965 So. 2d 959.

As stated above, when the *State v. Dennis* matter was called, Charles was not present, and no one present was aware of her whereabouts. It is evident from the exchange between the trial court and Ms. Dennis the court was seeking to gain a clear understanding of Charles's absence. The trial court did not inquire about anything regarding the Dennis matter; the court limited its inquiry to the whereabouts of Charles. The circumstances were extraordinary: the defendant and 21 witnesses called by the defense were present in court; defense counsel was not. We see no abuse of discretion in

---

[5] Charles also asserts after she and her attorney left the courtroom on November 16, 2022, the trial court swore Dennis in and allowed her to further testify against Charles. During the hearing, Dennis accused Charles and others of harassing her, and she stated, "I didn't send [Charles] to jail. I didn't – I didn't do that. I waited. I waited on her. I didn't know she wasn't going to come to court." There is no evidence Charles ever harassed Dennis, and Charles was denied her right to confront Dennis, her accuser. However, the record reveals the statements made by Dennis were not made in connection with the proceedings against Charles. After the Charles matter concluded, the next case on the docket was *State v. Dennis*. The trial court did not refer to Dennis' remarks regarding threats and harassment in its ruling finding Charles in contempt, and there is no evidence Charles was prejudiced by Dennis's comments. Thus, the record is devoid of evidence of any deprivation of Charles's right to "confront her accuser" in the contempt proceedings.

the trial court's actions, and we see no prejudice to Charles as a result of the trial court's questioning of Ms. Dennis.

Charles further contends the trial court erred in allowing the State to introduce into evidence her email to the trial judge's secretary, in which she stated, "I will not try this case *** without being properly prepared for trial." Charles argues the email was inadmissible hearsay, and the trial court relied on the hearsay evidence to prove she was not ready to proceed with the *Dennis* trial and to find her guilty of constructive contempt.

Generally, any out-of-court statement of the accused constitutes hearsay unless subject to an exception. La. C.E. art. 802; *State v. McDonald*, 387 So. 2d 1116 (La. 1980), *cert. denied*, 449 U.S. 957, 101 S. Ct. 366, 66 L. Ed. 2d 222 (1980); *State v. McGee*, 51,977 (La. App. 2 Cir. 4/3/19), 316 So. 3d 1196, *writ denied*, 19-00761 (La. 11/19/19), 282 So. 3d 1066. A statement is not hearsay if the statement is offered against a party and is his own statement, in either his individual or representative capacity. La. C.E. art. 801(D)(2)(a). The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *State v. Smith*, 54,489 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1108; *State v. Smith*, 50,268 (La. App. 2 Cir. 1/13/16), 186 So. 3d 703.

Here, contrary to Charles' assertion, the email was not hearsay. The record reveals the email was sent from the same email address from which Charles had been using to communicate with the court and the parties in this matter. The email contains Charles' own statements and was offered against her. Accordingly, we find the email was admissible, pursuant to La. C.E.

art. 801(D)(2)(a), as a personal admission, and the trial court did not abuse its discretion in allowing it to be admitted into evidence.[6]

## CONCLUSION

For the reasons set forth herein, we affirm the trial court's judgment.

All costs of the appeal are assessed to appellant, Michelle A. Charles.

**AFFIRMED.**

---

[6] We note Charles did not appeal her sentence. According to the assertions in her brief, she has served the sentence in its entirety. We are cognizant of the trial judge's duty to maintain the integrity of the court, and we cannot overlook the trial court's statutory authority to impose a jail sentence for constructive contempt of court. However, jail time, no matter how brief, imposed upon an officer of the court, is the most severe punishment available and should be reserved for the worst offenders.